IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CALVIN BURKE
DAVON HEMPHILL
    Plaintiffs,        RECEIVED Case No.

                        MAR - 1 2021

    VS                  BY MAIL        JURY DEMAND

ST. Louis City Jails,
LYDA KREWSON, Mayor
JIMMIE EDWARDS, Public
Safety Commissioner, DALE
GLASS, Jail Boss, ADRIAN
BARNES, CJC Supt., JEFFREY
E. CARSON, MSI Supt.
GEORGE HAYES, Deputy
Jail Boss, TONYA HARRY,
MsI Major, Lt. WILBURN,
Lt. BROCK, C/o SUG
KNIGHT (misnomer),
C/o DARDEN, DR. FREDRICK
ECHOIs
        defendants

            42 U.S.C 1983

## JURISDICTION

Jurisdiction is founded on 28 U.S.C § 1331 and 1343

### GRAVEMEN OF COMPLAINT

Plaintiffs a group of pre-trial detainees and convicted prisoners priorly held at the so-called City Justice Center but Now held at the so-called Medium se-curity Institution, infamously known as the Work-house bring this Federal Civil Rights complaint pur-suant to 42 U.S.C § 1983 for violation of their Constitutional Rights particularly 1st, 4th, 5th and 14th Amendments past, present and up to the filing of this complaint respectively. Defendants while act-ing under color of state law have willfully and wan-tonly deprived plaintiffs basic conditions of confine-ment and furthermore have demostrated with un-controverted proof they are wholly incompetent, incapable and unconcerned to institute policies and practices to protect the health and safety of those confined under their authority during this pandemic. During this pandemic, directly and indirectly, de-fendants continue to expose plaintiffs and those similarly situated to Covid 19 in ways, includ-ing but not limited to, by failing to test all

(2)

INComing prisoners, the mixing of Newly in-
take prisoners with previously housed prisoners,
again, incredibly, without any testing for Co-
vid 19 whatsoever, overcrowded and filthy condi-
tions in housing units and bullpens, inadequate
protection or just poor enforcement of masks
policy by both staff and prisoners among
other health and safety violations on display.
Not only that, defendants are engaged in a
Nefarious practice to see which of them can
discharge the most bottles of chemical irri-
tants (pepper spray), commonly, comically,
called "HOT SAUCE" against prisoners even with
KNOWN mental health issue which aid the
spread of Covid 19 through sneezing and coughing
by other prisoners not the target of defendants
unreasonable use of force. Judicial intervention
is immediately needed for within the pages of
this complaint treatment against those con-
fined under the defendants will shock the con-
science and even make a Kangaroo court
Chief Judge shake his head in disbelief.

(3)

# PARTIES

1.) Plaintiff Calvin Burke is currently being held against his will at the "Medium Security Institution/ Workhouse," a crumbling filthy slave pen poorly disguised as a jail owned and operated by the city of St. Louis, a symbol of waste, fraud and abuse. Tremendously under staffed with poorly trained and poorly supervised personnel. The "jail" is a public safety hazzard and should be closed immediately, given landmark status, and reopened for tourism with a theme highlighting it's notorious use for the war and profit off people of color and the poor. Everyday plaintiff is housed there his life is in imminent danger. 260 S. Tucker Blvd, St. Louis, mo 63102.

2.) Plaintiff Davon Hemphill reiterates paragraph 1 as if it was fully stated herein.

3.) ~~Plaintiff Samuel Williamson reiterates paragraph 1 as if it was fully stated herein.~~

4.) Plaintiff ~~Jean S Mc pherson reiterates paragraph 1 as if it was fully stated herein.~~

(4)

3) Defendant Lyda Krewson all times relevant to this suit was the elected mayor of the city of St. Louis in the state of Missouri. She bears full responsibility for the ongoing civil rights violations, excessive force against detainees, health and safety violations regarding covid-19 testing and protection and spreading in city jails. Defendant Krewson is being sued in her official and individual capacity

4) Defendant Jimmie Edwards all time relevant to this suit was the public safety commissioner for the city of St. Louis, state of Missouri He is a seasoned / professional Civil Rights Violator, his appointment by Krewson represent a direct threat and safety to the public at large and those confined in the city jails. He is fully responsible for the unrest in the city jails most notable the "City Justice Center" this past December and January. Defendant Edwards resignation will be a critical step in the right direction. He is being sued in his official and individual capacity.

(5)

5) Defendants: DALE Glass, ADRIAN BuRNes, Jeffrery E. CARSON, George HAyes and TONYA HARRy are all tax funded Civil Rights Violators with a long history of deliberate indifference to the health and safety of prisoners remanded to the City Jails, staffing the jails With poorly trained personnel with the knowledge they are incapable of discharging their duties in a professional manner with forseeable results they to will commit Civil Rights violation. All are being sued in their official and individual capacities. They can be served at 200 S. Tucker Blvd, St. Louis, Mo 63102.

6 Defendants: Lt. Wilborn, Lt. Brock, C/O sug Knight (misnomer), C/O DARDeN are a Cadre of the poorly trained and supervised working daily to violate the Civil rights of detainees in the City Jails through Unreasonable use of force and divers conspiracies to Violate such Civil rights/Constitutional Rights such as due process, equal protection of the laws, meaningful access to the courts among other rights. They all are being sued in their individual and official Capacities. They Can be served at 200 S. Tucker Blvd, St. Louis, Mo 63102

(6)

7) St. Louis City Jails, population all times relevant to this suit was predominately comprised of people of color.

8) Covid-19 has disproportionately affected people of color, with the death rates among blacks increasing 50% compared with whites.

9) As of December 18, 2020, one in five prisoners in the United States was infected with Covid-19, according to an Associated Press / Marshall Project report.

10) Incarcerated people are five times more likely to become infected than the general population.

11) Up to the filing of this complaint, there were 730 people being held at the St. Louis City Justice Center, and 150 at the Workhouse, thus meaning there is roughly 175 Covid-19 cases at the jails.

12) Jacob Long spokesperson for Defendant Krewson, Mayor, (hereafter Defendant Krewson), "There is not yet any public, city-level data available regarding COVID-19 transmission within St. Louis' jails, or among Correctional officers." Defendant Krewson statement via her spokesperson

(7)

Clearly demostrate deliberate indifference to
the safety and health of plaintiffs and those
similarly situated and the public at large,
for these jailed people of color will soon be
released back to their communites of color with-
out testing for Covid-19 and their families.

BERNARD LYNCH'S MODERN DAY SLAVE
                    PEN

13) Upon entry into the City Justice Center
(CJC) plaintiffs and those similarly situated
are placed in bullpens.

14) On average there are at least ten to fif-
teen prisoners in these bullpens.

15) The average time housed in these bullpens
can range from three to fifteen days depend-
ing on the charge(s), warrant(s) or court hearing(s) X
in which prisoners charged or awaiting charge(s) must
sleep on floors, benches, under benches,
next to toilets in their own vomit from detoxing
and trash among other things.

16) The plaintiffs all were denied basic human needs:

   A. Soap for handwashing prior to eating
      or after using the toilet.

(8)

B. Toothbrush and tooth paste
C. Space for social distancing
D. Clean and sanitized area (phones also)
E. Showers
F. Blankets, towels, masks
G. Due Process of law
H. Right to treated humanely.

17) Jacob Long, Defendant Krewson spokes-
person stated in pertinent part in St. Louis
American December 17-23 2020 paper.
" This is very much a capacity and safety issue
... CJC is currently well above operational ca-
pacity. So we are not about to overcrowd CJC
even more and have detainees sleep on the
floor, jeopardizing their health and safety
and the health and safety of our staff. We
have an obligation under the law to humanely
house those who the courts and circuit attornies
remand to our facilities." That is an untruth.

18) While Jacob Long was disseminating the
above egregious propaganda masquerading as the
truth all of the following defendants and some
that should be defendants, but are not named,
knew that this statement to the public was
false end user information: Krewson, Edwards,
Glass, Barnes, Carson, Hayes, Lt. Bridges,
Brock, Wilborn, ████ and Echols, but, never-
theless remained silent at the detriment of the detainees.

(9)

"COVID-19 TESTING AT ST. LOUIS CITY JAILS"

19) After plaintiffs were housed in bullpens on average of **3** to 15 days, with poor masks protection, poor masks wearing by staff and prisoners, and zero social distancing they were not even tested for Covid-19 as a mandatory precaution or even asked for that matter said.

20) There is nothing posted in the jail what-soever hinting even that you could be tested.

21) The defendants test method for Covid-19 is whether you are dead or alive.

22) Up to the filing of this Complaint plaintiff Burke has requested Covid-19 testing several times with no reply at all.

23) All of the defendants in this complaint know without mandatory Covid-19 testing the mixing of the sick prisoners with the non-sick prisoners is inevitable and communities of color will pay the ultimate price in lives.

( 10 )

24) Many sick prisoners have already been released back into their communities or transfered to other jails or prisons within the state and out of state because of the defendants reckless approach during this pandemic.

25) All of the plaintiffs and those similerly situated are in imminent danger while being confined under these conditions at St. Louis City jails

26) Despite nearly 500,000 Covid-19 deaths Defendants Krewson, Edwards, Glass, Barnes, Carson, Hayes and Echols are still flying by the seat of their pants as the city jail become a hotspot for the virus and people of color needlessly die.

27) All of the above named defendants in the previous paragraph should follow Gov. Kate Brown of Oregon, although at the behest of a federal Magistrate, and, too, begain to offer vaccinations to the incarcerated immediately without federal intervention in St. Louis City jails.

( 11 )

## INMATE SUPERVISION

28) General population inmates are offenders who have fewer restrictions, access to more programs, jobs, more privileges, and more freedom in movement. Inmate Handbook pg 9. (3) Exhibit 1

29) Special management status includes Protective Control, Special needs, Disciplinary Segregation, Administrative Segregation, Watch status or etc. Inmate HANDbook pg 9. (4).

30) All times relevant plaintiff(s) Burke, was housed under special management status.

31) All times relevant plaintiff(s) Hemphill was housed under special management status.

~ ) ~~All times relevant plaintiff(s) Hemphill was housed under special management status~~.

32) Due to risk, more employees are required to supervise these offenders and they often have to recreate alone. These inmates' access to elective activities will be established on a case by case basis according to their conduct and individual requirements.

( 12 )

33) ON December 29, 2020 56 detainees Were transfered to the Workhouse following protest over conditions of confinement at CJC

34) ON January 1, 2021 another 45 detainees Were transfered to the Workhouse following protest over conditions of confinement at CJC.

35) All of the transfered detainees were either high risk / maximum sercurity Classification or suspected of protesting at CJC Which was deemed a threat to security and safety of the jail.

36) Subsequently, all of the plaintiffs Who Were medium secunty detainees were lockdown 23½ hours a day with only 30 minutes out of their cells because of these transfers.

37) Plaintiff Were not only, treated like high security detainees, they Were housed With them on the special management Unit.

(13)

38) At No time Was either plaintiffs Burke OR Hemphill ~~or with classification~~ Classification Called for their placement under special Management Status.

NOISE LEVEL IN SPECIAL MANGEMENT STATUS

39) The Noise level in special management status housing is 24 hours a day, 7 days a week of yelling, screaming, Kicking and banging on doors, blarring television agruing between Staff and in-mates among other unrest and unManagable situations by Correctional officials.

40) Plaintiffs suffer from Sleep deprivation because of the Noise which as in addition cause the following problems;

 a. Weight loss / muscle fatigue / tension
 b. loss of appetite
 c. memory loss / lack of focus
 d. Poor decision making / General "brain fog"
 e. lack of organizational skills
 f. frustration and anger episodes / tired.
 G. Difficulty with concentration
 H. Feeling disconnected from other people.

( 14 )

"HOT SAUCE ON SKINS"

41) Most of the St. Louis City Jails staff are:
old, overweight, out-of-shape, and poorly
trained and supervised, so much so as to cause
a threat and safety issue to the jails and
confined alike.

42) Defendant Edwards and Glass solution to
the overcrowded jail situation and poorly
trained and supervised was to arm jail staff
with pepper spray, and turn them loose to
commit arbitrary violence against prisoners
without due process of law to keep "them" in line.

43) Defendants Lt. ~~████████~~, ~~████████~~
Brock and Wilborn and other Correctional
employees refer to pepper spray as "Hot Sauce"
and brag about how much "hot sauce" they
can spray on skins (meaning the face and
body of prisoners) ~~which~~ has encouraged its use/abuse.

44) All of the plaintiffs ~~████~~ mentioned in this
Complaint have been sprayed at least one
time ~~████████~~ by the defendants.

(15)

45) Plaintiff Burke this past January while working as a food server in CJC was soaked with pepper spray A.K.A "Hot Sauce" when he was attacked by another prisoner.

46) Plaintiff Burke was sprayed by an officer commonly referred as to "Sug Knight".

47) Defendant "Sug Knight" refused to allow plaintiff to shower after he was sprayed.

48) Plaintiff did not shower until 12 hours later which left his skin burning and irritated.

49) Everybody part plaintiff touch began to burn even his private body parts after using toilet.

50) On February 15, 2021 plaintiff Hemphill was sprayed by defendant Darden with "hot sauce".

51) Defendant Darden is infamously known for his spray first and justify later approach to the use of this chemical agent.

52) Plaintiff Hemphill had not violated any rules,

(16)

laws, or policies of the jail or state before defendant Darden sprayed him with the "hot sauce," without due process of law.

53) Plaintiff Hemphill was not charged with any disciplinary infraction.

54) Plaintiff was placed on lockdown by Darden for 10days

55) Plaintiff Hemphill was not allowed to shower or out of cell recreation during this time.

56) Plaintiff Hemphill has been repeatedly denied a Grievance form or anyother form to document the Conduct of C/O Darden, Criminal and Civil Violations.

57) Plaintiff Hemphill has been uncontroveredly denied equal protection of the laws

58) Defendants Glass, Edwards, Carson, Barnes Hayes and Harry encourage this unreasonable use of force by and through their failure to hire, train and supervise and their intentional failure to institute a review policy each time pepper spray is used.

(17)

FAILURE TO HIRE, TRAIN AND SUPERVISE.

59) Defendants Glass, Edwards, Carson, Barnes, Hayes and Harry have not instituted NO training or supervision to deescalate situations before pepper spray is used.

60) The only training or what qualify as training is for the use of pepper spray is that you know how to press a nozzle

61) Correctional staff have been left to their own discreation and devices on the use of this force which is powerful enough to stop a bear in its tracks

62) Plaintiff Burke and Hemphill watched in dis — belief as Lt. Wilborn and two other officers, who shrewdly and intentionally wore no name tags, took turns emptying their pepper spray a.k.a "Hot sauce" on an inmate, clearly with a mental illness, for smearing human waste on his cell walls.

63) The inmate was locked in his cell during this pepper spray attack which not only

(18)

harmed him, but, plaintiffs who began
coughing and gasping for air as all of
the correctional staff, defendant Wilborn,
left the area laughing and bragging on this crime.

64) Defendants Glass, Edwards, Hayes, Barnes,
HARRY, and Carson refuse to properly
train and supervise staff on the use of
this spray and therefore need to institute
a moratorium on its use forthwith.

65) All of the above defendants in the previous
paragraph are policymakers.

66) Defendant Krewson hiring of Edwards and her
continuation of Glass, Carson, Barnes,
Hayes, Harry in their prior positions
underscores deliberate indifference to plaintiffs
and those similarly situated and the
public at large for these individuals
have a long and clear track record of
civil rights violations

67) None of the defendants are entitled to
qualified immunity or any other kind of

( 19 )

Immunity whatsoever for the Constitutional rights of the plaintiffs were clearly established before the defendants acted or failed to act, and even if there were not established any prudent person would have known their actions would be deemed unconstitutional.

## Count One
### 42 U.S.C § 1983

68. Plaintiffs reiterates paragraphs 1-67 as if fully stated herein.

## Count Two
### 1st Amendment Redress of Grievance.

69. Plaintiffs reiterates paragraphs 1-68 as if fully stated herein

70. Plaintiff Hemphill was denied by the defendants the use of the grievances process as more fully described in the above paragraphs.

( 20 )

## COUNT THREE
### 4th Amendment Unreasonable Force

71. Plaintiffs reiterates paragraph 1-70 as
if fully stated herein

72. The use of pepper spray against the
plaintiffs was totally Unreasonable use
of force by the defendants as more
fully described in the previous paragraphs.

## COUNT FOUR
### 5th Amendment DUE Process of law

73. Plaintiffs reiterates paragraph 1-72 as
fully stated herein

74. Plaintiffs were sprayed with pepper mace with-
out due process of law as more fully de-
scribed in the previous paragraphs

75. Plaintiffs were disciplined despite no
disciplinary report filed against him as
more fully described in the previous
paragraphs

(21)

COUNT THREE
UNReasonable Force

76. Plaintiff was denied out of cell exercise
after he was sprayed with mace and
lockdown ~~to cover~~ as more fully described
in the previous paragraph.

77. Plaintiffs, medium security classified, were
denied all general population priveliges
and lockdown 23½ hours a day and
sometimes 24 hours a day despite having
committed no rule infractions as more
fully described in the previous paragraphs

Count 5
8th Amendment Cruel and Unusual Punishment

78. Plaintiffs reiterates paragraph 1-77 as
if fully stated herein

79. The use of pepper spay against plaintiffs
Was cruel and unusual punishment

Count 6
~~8 thiril~~ 14th Amendment Equal Protection

(22)

80. Plaintiffs reiterates paragraph 1-79 as if fully stated herein.

81. Plaintiffs were denied equal protection of the laws as more fully described in the previous paragraphs

## COUNT 7
Failure to Hire, train and supervise.

82. Plaintiffs reiterates paragraph 1-81 as if fully stated herein.

83. Defendant(s) hired an ignorant work force then failed to properly trained this ignorant work force in order that they will become knowledgeable of their duties and task. ~~a~~

84. Defendant(s) unleashed this ignorant work force without supervision. left only to rely on their own devices. with the results filed in this complaint, and with many more of their wrong doing yet to be discovered, if ever at all, as proof, the lights were on but no one was at home.

(23)

RELIEF REQUESTED

85  Plaintiffs are entitled to Compensatory as a matter damages
of law against all of the defendants jointly and
severally in excess of $250,000; and because
the defendants action or actions or lack thereof
was so egregious as to shock the conscience
punitive damages are warranted to deter
these state actors and their successor from
engaging in such Unconstitutional Conduct
in the future. AND whatever this else
this Honorable Court deems just and proper.

2/18/2021

Calvin Burke

Calvin Burke

2-18-2021

Davon Hemphill

Davon Hemphill

(24)